# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

THEODORE STEVENS,

      Petitioner,

vs.

ROBERT LE GRAND, et al.,

      Respondents.

Case No. 3:12-cv-00081-RCJ-WGC

**ORDER**

Before the court are the first amended petition for writ of habeas corpus (#15), respondents' answer (#43), and petitioner's reply (#48). The court finds that relief is not warranted on the remaining claims for relief, and the court denies the petition.

After a jury trial, petitioner was convicted in state district court of first-degree murder. Ex. 2 (#17). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 30 (#18). Petitioner then filed in state district court a post-conviction habeas corpus petition. Ex. 35 (#19). The state district court denied the petition. Ex. 84 (#21). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 93 (#22).

Petitioner then commenced this action. The court appointed counsel, who filed the first amended petition (#15). The first amended petition contained four grounds, designated A through D. Respondents moved to dismiss (#32) most of the grounds because they were procedurally defaulted. The court agreed that grounds B, C, and D, and part of ground A, discussed below, were procedurally defaulted because petitioner did not raise those issues on direct appeal. The court also determined that petitioner did not show cause or prejudice to excuse the procedural defaults. Order

1   (#40).  Reasonable jurists would not find the court's conclusions on these matters to be debatable or

2   wrong, and the court will not issue a certificate of appealability on these grounds.

3            Congress has limited the circumstances in which a federal court can grant relief to a

4   petitioner who is in custody pursuant to a judgment of conviction of a state court.

5            An application for a writ of habeas corpus on behalf of a person in custody pursuant to the
             judgment of a State court shall not be granted with respect to any claim that was adjudicated
6            on the merits in State court proceedings unless the adjudication of the claim—

7            (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
             clearly established Federal law, as determined by the Supreme Court of the United States; or
8
             (2) resulted in a decision that was based on an unreasonable determination of the facts in
9            light of the evidence presented in the State court proceeding.

10   28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the

11   merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v.

12   Richter, 562 U.S. 86, 98 (2011).

13           Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown
             that the earlier state court's decision "was contrary to" federal law then clearly established in
14           the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or
             that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was
15           based on an unreasonable determination of the facts" in light of the record before the state
             court, § 2254(d)(2).
16

17   Richter, 562 U.S. at 100.  "For purposes of § 2254(d)(1), 'an unreasonable application of federal

18   law is different from an incorrect application of federal law.'"  Id. (citation omitted).  "A state

19   court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

20   jurists could disagree' on the correctness of the state court's decision."  Id. (citation omitted).

21           [E]valuating whether a rule application was unreasonable requires considering the rule's
             specificity.  The more general the rule, the more leeway courts have in reaching outcomes in
22           case-by-case determinations.

23   Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

24           Under § 2254(d), a habeas court must determine what arguments or theories supported or, as
             here, could have supported, the state court's decision; and then it must ask whether it is
25           possible fairminded jurists could disagree that those arguments or theories are inconsistent
             with the holding in a prior decision of this Court.
26

27   Richter, 562 U.S. at 102.

28

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 103.

On March 23, 2005, petitioner and his girlfriend, Duchess Davis, were leaving Buffalo Bill's Resort & Casino in Primm, Nevada. The parking valet informed petitioner that his car would not start. Meanwhile, Davis called her father in Los Angeles to say that her baby daughter, Russia Davis, was very ill or dead. Her father called a relative in Las Vegas, who in turn called 911 and the hotel. Hotel security, paramedics, the Las Vegas Metropolitan Police Department, and medical examiner's staff all responded. Russia Davis was dead. The fatal injuries were a heavy blow or blows to the back of her head that fractured her skull. She had suffered other injuries, too.

Police Investigator Sauchak interviewed petitioner twice in Primm. The first interview started at 1:27 p.m. Ex. 117 (#23). The second interview started at 3:31 p.m. Ex. 118 (#23). Police Officer Hodgkinson was present at the first interview and observed the second interview in another room. After the second interview, Investigator Sauchak arrested petitioner. Officer Hodgkinson drove petitioner from Primm to the Clark County Detention Center in Las Vegas, a trip of about 45 miles. During the drive, petitioner asked Hodgkinson what the charges were. Hodgkinson replied that he did not know exactly, but that they would be serious and could possibly carry the death penalty. Hodgkinson also opined that petitioner's explanations to Sauchak were ridiculous. Ex. 171 at 11-13 (#25) (transcript of suppression hearing). See also Ex. 134 (#24) (report of Officer Hodgkinson). A couple of miles from the jail, petitioner said that he wanted to tell the real story. Id. at 13. When they arrived at the jail, Hodgkinson asked petitioner if he still wanted to talk. Hodgkinson said that he did not want to waste the investigators' time if petitioner was going to retell or embellish the statements that he gave in Primm. Hodgkinson said that he would hear what petitioner had to say briefly, and if it was worthwhile then he would call the investigators. Hodgkinson said that petitioner had a choice, that he was not coercing petitioner, that if the investigators came petitioner would be given the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), when a person is subjected to custodial interrogation, and that petitioner would

-3-

1    need to waive those rights before giving a statement.  Hodgkinson did not actually give the <u>Miranda</u>

2    warnings to petitioner.  <u>Id.</u> at 16, 20.  Petitioner gave Hodgkinson a confession.  Hodgkinson called

3    Sauchak to the jail.  She gave petitioner the <u>Miranda</u> warnings, he waived them, and he confessed.

4           Petitioner, represented by the county public defender, moved to suppress the statements that

5    petitioner gave to Hodgkinson and Sauchak at the jail.  Petitioner argued that the statement he gave

6    to Hodgkinson was the product of custodial interrogation without the benefit of the <u>Miranda</u>

7    warnings.  Petitioner argued that the <u>Miranda</u> warnings given to him before he gave the statement to

8    Sauchak were ineffective because he was subjected to a deliberate two-step interrogation designed

9    to circumvent <u>Miranda</u> by first giving the statement to Hodgkinson and then being asked to repeat

10   the statement after being given the <u>Miranda</u> warnings.  Ex. 4 (#17).  <u>See also</u> <u>Missouri v. Seibert</u>,

11   542 U.S. 600 (2004).  Petitioner did not move to suppress the statements that he had given in

12   Primm, and he admitted at the suppression hearing that they were given in a non-custodial setting.

13   Ex. 172 at 14 (#25).  The prosecution agreed that petitioner's statement to Hodgkinson at the jail

14   would not be admitted into evidence.  Ex. 171 at 4 (#25).  The trial court determined that there was

15   no deliberate two-step interrogation designed to circumvent <u>Miranda</u>, and the trial court denied the

16   motion.[1]

17          Petitioner elected to represent himself at trial.  On direct appeal, the county public defender

18   again represented him.

19          Ground A originally had four parts.  First, petitioner argued that his statements in

20   <u>Primm</u> were the result of custodial interrogation in violation of <u>Miranda</u>.  The court dismissed this

21   part of ground A because it was procedurally defaulted.  Second, petitioner argues that the statement

22   he gave to Sauchak at the jail violated <u>Seibert</u>.  Third, petitioner argues that pre-trial counsel

23

24   _____

25          [1]The evidentiary portion of the suppression hearing occurred on December 16, 2005.  Ex.
     171 (#25).  The parties then filed post-hearing briefs.  Ex. 5, Ex. 6 (#17).  The hearing continued on
26   February 3, 2006, when the parties argued and the judge denied the motion.  The court of appeals
     decided <u>United States v. Williams</u> on January 30, 2006.  The parties and the judge did not have the
27   benefit of <u>Williams</u> for the evidentiary portion of the hearing and for the briefs.  It is unclear
     whether they knew about <u>Williams</u> at the argument four days after the issuance of the <u>Williams</u>
28   decision.  However, <u>Williams</u> did not decide anything about the holding of <u>Seibert</u> that was different
     from the authorities that the prosecution cited and argued.

1    provided ineffective assistance because pre-trial counsel did not challenge the admissibility of

2    petitioner's statements given in Primm.  Fourth, petitioner argues that appellate counsel provided

3    ineffective assistance because appellate counsel did not raise on direct appeal the admissibility of

4    petitioner's statements given in Primm.

5         On the issues of petitioner's statements to Hodgkinson in the car and at the jail, and

6    petitioner's statement to Sauchak at the jail, the Nevada Supreme Court held:

7         Incriminating statements made by a suspect during a custodial interrogation should be
          suppressed unless Miranda warnings have been given.  E.g., Miranda v. Arizona, 384 U.S.
8         436, 444 (1966); Somee v. State, 124 Nev. ___, ___, 187 P.3d 152, 159 (2008).  Here, it is
          undisputed that Stevens was in custody when he communicated with Officer Hodgkinson;
9         therefore, the relevant inquiry is whether Stevens' statement was the result of an
          interrogation.  An interrogation occurs when a defendant is "subjected to either express
10        questioning or its functional equivalent."  Rhode Island v. Innis, 446 U.S. 291, 300-01
          (1980).  In other words, a defendant's statements are the result of an interrogation, and thus
11        inadmissible, if they were the result of "words or actions" that the police "should have
          known were reasonably likely to elicit an incriminating response."  Id. at 302.  "[N]ot . . . all
12        statements obtained by the police after a person has been taken into custody are to be
          considered the product of interrogation.'"  Id. at 299.  "'Volunteered statements of any kind
13        are not barred by the Fifth Amendment and their admissibility is not affected by
          [Miranda].'"  Id. at 300 (quoting Miranda, 384 U.S. at 478).
14
          We first conclude that Stevens' statements to Officer Hodgkinson were volunteered and
15        were not the product of an "interrogation" within the meaning of Miranda.  Stevens twice
          initiated conversations with Officer Hodgkinson by asking questions, which were answered.
16        Then, after a period of silence, Stevens announced his desire to tell the "real story."  Officer
          Hodgkinson did not inquire further until they arrived at the detention center and then only to
17        determine whether Stevens intended to share new information before calling investigators.
          Officer Hodgkinson did not question Stevens.  Nothing in the record indicates that Stevens'
18        pre-Miranda statements were anything other than voluntary.

19        We likewise conclude that Stevens' post-Miranda statement to Detective Sauchuck [sic] was
          admissible.  Stevens claims that the statement was inadmissible because it was the product of
20        an illegal "question first" strategy employed by law enforcement.  In Missouri v. Seibert,
          542 U.S. 600 (2004), the United States Supreme Court disapproved of a two-stage
21        interrogation technique in which police officers deliberately conduct an interrogation
          without providing Miranda warnings until they obtain a confession and then later administer
22        Miranda warnings and get the suspect to repeat his prior confession.  The Supreme Court
          concluded that such procedures did not comply with the constitutional requirements of
23        Miranda.  Id. at 604.  However, because we conclude that Stevens' statements to Officer
          Hodgkinson were not the result of an illegal custodial interrogation, Seibert is inapplicable.
24        This is not a case where police officers deliberately conducted an unconstitutional
          interrogation and then used the results of that interrogation to obtain a second post-Miranda
25        confession.  Accordingly, we conclude that the district court did not err in denying Stevens'
          motion to suppress.
26

27   Ex. 30, at 4-5 (#18).

28

1    Innis was arrested for murder.  The weapon used was a shotgun.  After being given his

2 Miranda warnings, and after asking to speak with a lawyer, he was placed in a car with three police

3 officers to be driven to the jail.  Two officers started conversing among themselves; the third officer

4 did not participate but heard the conversation.  One officer said that a school for handicapped

5 children was nearby, that one of them might find the weapon with shells, and that they might hurt

6 themselves.  Another officer said that they should continue to search for the weapon, and that it

7 would be too bad if a little girl picked up the weapon and killed herself.  446 U.S. at 294-95.  Innis

8 then told the officers that they should turn the car around, and he would show them the weapon.

9 The driver turned around and went back to the place of arrest.  There, Innis was informed of his

10 Miranda rights again, and he revealed the location of the weapon.  Id. at 295.  After stating the rule

11 that the Nevada Supreme Court quoted above, the Supreme Court first held that Innis was not

12 expressly questioned.  Id. at 302.  The Supreme Court then held that there was no functional

13 equivalent to questioning.  The officers' conversation was, at most, "subtle compulsion," but it was

14 not established that the police officers should have known that their conversation was reasonably

15 likely to elicit an incriminating response.  Id. at 303.

16    There are a few differences between Innis and petitioner's case.  Innis was given Miranda

17 warnings upon arrest.  Petitioner was not.  Innis requested to speak with a lawyer.  Petitioner did

18 not.  The police officers in Innis started conversing among themselves.  Petitioner initiated a

19 conversation with Hodgkinson.

20    Nonetheless, there are enough similarities between Innis and petitioner's case that the

21 Nevada Supreme Court reasonably could have concluded that petitioner's statement to Hodgkinson

22 was not the result of custodial interrogation.  In response to petitioner asking what charges he faced,

23 Hodgkinson stated that he did not know for certain, but that the charges would be serious because

24 they involved the death of a baby, and that petitioner could face the death penalty.  The decision to

25 pursue the death penalty was not Hodgkinson's, but his evaluation was not inaccurate.  Hodgkinson

26 said that petitioner's explanation in his statements given in Primm was ridiculous.  Petitioner had

27 stated in Primm that Russia was injured when she fell off the bed.  The top surface of hotel bed was

28 no more than a couple of feet from the floor, which itself was carpeted.  Russia could not have

1   suffered the severe injuries to her head from such a fall.  Russia also had suffered other, non fatal

2   injuries, such as a bite.  The word "ridiculous" can be strong, but again Hodgkinson was not

3   inaccurate, because nobody who knew the extent of Russia's injuries could believe that explanation.

4   Petitioner then told Hodgkinson that he wanted to tell the real story.  Hodgkinson told him to wait

5   until they arrived at the jail, which appeared to have been two and a half to three and a half miles

6   away, depending upon what freeway exit Hodgkinson used.[2]  Innis was driven back a mile to the

7   place of arrest.  If the police officers in <u>Innis</u>—who were specifically tasked with driving Innis to the

8   jail, then stated that they should continue to look for a weapon because little handicapped children

9   could be harmed or killed if they found the weapon first—exerted nothing more than "subtle

10  compulsion" upon Innis and not the functional equivalent of interrogation, then the Nevada

11  Supreme Court reasonably could have concluded that Hodgkinson's statements to petitioner in the

12  police car were not the functional equivalent of interrogation.

13          The Nevada Supreme Court's ultimate conclusion then becomes a reasonable application of

14  federal law.  If there is no initial custodial interrogation without <u>Miranda</u> warnings, then there is no

15  deliberate two-step interrogation process, and no violation of <u>Seibert</u>.

16          The other issue is whether petitioner's statement to Sauchak was voluntary.  On direct

17  appeal, petitioner interspersed the issue of voluntariness with the issue of <u>Seibert</u>.  The Nevada

18  Supreme Court did not comment on the issue of voluntariness, but the Nevada Supreme Court

19  reasonably could have concluded that the confession was voluntary.  As petitioner notes, a court

20  reviews the totality of circumstances to determine the voluntariness of a confession.  <u>Withrow v.</u>

21  <u>Williams</u>, 507 U.S. 680, 693 (1993).

22          The totality of the circumstances before the Nevada Supreme Court and this court do not

23  include the circumstances surrounding petitioner's statements given at Primm, for two reasons.

24  First, on a procedural level, petitioner has procedurally defaulted the substantive claims regarding

25

26  _____

27          [2]Petitioner generated on Mapquest.com a route from the interchange of Interstate 15 and
    Sahara Avenue to the street address of the Clark County Detention Center.  Ex. 131 (#24).  The
28  route is circuitous, but it keeps to the freeways as long as possible.  A route one mile shorter is
    possible using surface streets.

-7-

1   those statements.  Second, this court's review pursuant to 28 U.S.C. § 2254(d)(1) is limited to the

2   record before the state court.  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  Petitioner never

3   made an issue of the voluntariness of his statements in Primm or whether he was in custody at the

4   time.  At the suppression hearing, he stated that neither statement given in Primm was at issue.  Ex.

5   172 at 14 (#25). Although petitioner does question the effectiveness of pre-trial counsel in not

6   making a record in state court about the statements given at Primm, that is a separate claim.  The

7   fact remains that he did not make that record, and this court cannot now expand the record in

8   determining whether petitioner's statement to Sauchak was voluntary.

9       Petitioner also has submitted a report by Richard Ofshe, Ph.D., evaluating the voluntariness

10  of petitioner's statement.  This report was not made part of the record in the state-court proceedings,

11  and the court cannot consider it in this court's review.  Pinholster, 131 S. Ct. at 1398.

12      The Nevada Supreme Court reasonably could have concluded that petitioner's statement to

13  Sauchak was voluntary.  Right before that statement, he was given the Miranda warnings, and he

14  waived his rights.  Additionally, before he gave his statement to Hodgkinson in the jail, Hodgkinson

15  told petitioner that petitioner had free will in the matter, that Hodgkinson was not coercing him, and

16  that Sauchak would inform him of the Miranda rights, which petitioner would need to waive, before

17  giving the statement.  Ex. 171 at 20-21 (#25).  Petitioner was given repeated opportunities not to

18  give a statement, and yet he still gave it.

19      The other remaining parts of ground A are claims of ineffective assistance of counsel.

20  "[T]he right to counsel is the right to the effective assistance of counsel."  McMann v. Richardson,

21  397 U.S. 759, 771 & n.14 (1970).  A petitioner claiming ineffective assistance of counsel must

22  demonstrate (1) that the defense attorney's representation "fell below an objective standard of

23  reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's

24  deficient performance prejudiced the defendant such that "there is a reasonable probability that, but

25  for counsel's unprofessional errors, the result of the proceeding would have been different," id. at

26  694.  "[T]here is no reason for a court deciding an ineffective assistance claim to approach the

27  inquiry in the same order or even to address both components of the inquiry if the defendant makes

28  an insufficient showing on one."  Id. at 697.

1     Strickland expressly declines to articulate specific guidelines for attorney performance

2 beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the

3 duty to advocate the defendant's cause, and the duty to communicate with the client over the course

4 of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's duties so

5 exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . .  Any

6 such set of rules would interfere with the constitutionally protected independence of counsel and

7 restrict the wide latitude counsel must have in making tactical decisions."  Id. at 688-89.

8     Review of an attorney's performance must be "highly deferential," and must adopt counsel's

9 perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."

10 Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's

11 conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

12 overcome the presumption that, under the circumstances, the challenged action 'might be considered

13 sound trial strategy.'"  Id. (citation omitted).

14     The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

15 proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.

16 Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

17 below an objective standard of reasonableness alone is insufficient to warrant a finding of

18 ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

19 prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,

20 but for the attorney's challenged conduct, the result of the proceeding in question would have been

21 different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence

22 in the outcome."  Id.

23          Establishing that a state court's application of Strickland was unreasonable under § 2254(d)
          is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly
24          deferential," . . . and when the two apply in tandem, review is "doubly" so . . . .  The
          Strickland standard is a general one, so the range of reasonable applications is substantial.
25          Federal habeas courts must guard against the danger of equating unreasonableness under
          Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is
26          not whether counsel's actions were reasonable. The question is whether there is any
          reasonable argument that counsel satisfied Strickland's deferential standard.

27

28 Richter, 562 U.S. at 105 (citations omitted).

1    On the issue of pre-trial counsel not challenging the statements in Primm, the Nevada

2    Supreme Court held:

3    [Petitioner] first claimed that his pretrial counsel was ineffective for failing to challenge his
     detainment in a casino and in a police vehicle while in Primm, as well as any statements he
4    made to the police during that time period.  Appellant failed to demonstrate that his
     counsel's performance was deficient or that he was prejudiced.  Appellant was properly
5    detained based upon reasonable suspicion, see NRS 171.123(1), and later upon probable
     cause of child abuse and neglect due to the discovery of the deceased infant, who had
6    multiple bruises and bite marks, see Lyons v. State, 106 Nev. 438, 446, 796 P.2d 210, 215
     (1990), abrogated on other grounds by Vanisi v. State, 117 Nev. 330, 341, 22 P.3d 1164,
7    1171-72 (2001).  Further, appellant's statements during these detentions, that the infant's
     injuries occurred when she fell off of the bed, were repeated multiple times during trial by
8    appellant.  Therefore, appellant failed to demonstrate a reasonable probability of a different
     outcome had counsel attempted to suppress those statements.

9

10   Ex. 93 at 2-3 (#22).  On the issue of appellate counsel not challenging the statements in Primm, the

11   Nevada Supreme Court held:

12   First, appellant claimed that his appellate counsel was ineffective for failing to challenge his
     detention and questioning by the police in Primm and his failure to be brought before a
13   magistrate without unnecessary delay.  As discussed previously, appellant failed to
     demonstrate deficiency or prejudice for these claims.  He likewise failed to demonstrate that
14   these issues had a reasonable probability of success on appeal.  Therefore, the district court
     did not err in denying these claims.

15

16   Ex. 93 at 4 (#22).

17       At the preliminary hearing, pre-trial counsel did ask Sauchak whether petitioner was in

18   custody in Primm.  She testified that a couple of times she saw petitioner in the hotels' parking lots,

19   smoking.  She also testified that petitioner was asked to remain for interviews, and that he agreed.

20   Ex. 168 at 84-86 (#25).  Her responses did not indicate that petitioner was in custody.  Additionally,

21   counsel knew that petitioner had other reasons why he did not leave.  Petitioner's car was

22   inoperative, and even if it did work, the police would not have let him take it because Russia's body

23   was in car, making it part of a legitimate investigation.  Primm consists of three hotels, an outlet-

24   store shopping mall, a few fuel stations, and a few fast-food restaurants.  The nearest city or town of

25   any size is Las Vegas, forty miles to the north on Interstate 15.  Pre-trial counsel reasonably could

26   have concluded that if petitioner did not feel free to leave, it was not because the police were

27   holding him in Primm, but because he had nowhere else to go.

28

1    Petitioner's representation of himself at trial has removed any possible traces of prejudice

2 from the actions of pre-trial counsel and appellate counsel.  Even if pre-trial counsel did move to

3 suppress the statements that petitioner made in Primm, petitioner then represented himself and

4 referred to those statements himself, starting with his opening statement.  E.g., Ex. 185 at 68-69

5 (#26).  Then, in petitioner's cross-examination of Hodgkinson, his own questions to Hodgkinson

6 revealed that he confessed to killing Russia.  Ex. 187 at 54-55 (#26).[3]  This occurred before Sauchak

7 testified about petitioner's recorded confession at the jail.  Likewise, after trial, there was no point in

8 appellate counsel challenging the validity of the statements given in Primm once petitioner himself

9 made them part of his defense.  By the time of the appeal, the issue was without merit.  On both

10 claims, the Nevada Supreme Court reasonably applied Strickland.

11    To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a

12 certificate of appealability, after making a "substantial showing of the denial of a constitutional

13 right."  28 U.S.C. §2253(c).

14    Where a district court has rejected the constitutional claims on the merits, the showing
       required to satisfy §2253(c) is straightforward:  The petitioner must demonstrate that
15    reasonable jurists would find the district court's assessment of the constitutional claims
       debatable or wrong.

16

17 Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077-79 (9th

18 Cir. 2000).

19    On the claims of ineffective assistance of counsel in ground A, the court will not issue a

20 certificate of appealability.  Reasonable jurists would not find debatable the court's determination

21 that nothing either pre-trial counsel or appellate counsel would have made a difference given

22 petitioner's own actions at trial.  On the claim that the Miranda warnings given before petitioner's

23

24

25    [3]Petitioner argues that any error could not be harmless because "[t]he Court can have no
    confidence that Mr. Stevens would have been convicted of first-degree-murder absent evidence of
26    his statements to Hodgkinson and Sauchak."  Reply at 21 (#48).  The problem is that petitioner
    himself put the existence and general details of his confession to Hodgkinson before the jury.  The
27    court cannot conclude that petitioner's statements had a substantial and injurious effect upon the
    jury's verdict, Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), when petitioner himself gave
28    that information to the jury, regardless of anything that the prosecution did or would have done.

-11-

statement to Investigator Sauchak were effective, reasonable jurists might differ over the court's conclusion, and the court will issue a certificate of appealability on that claim.

IT IS THEREFORE ORDERED that the first amended petition (#15) is **DENIED**.  The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the issue whether the <u>Miranda</u> warnings given to petitioner before his statement to Investigator Sauchak were effective.

Dated:   April 13, 2015.

_____
ROBERT C. JONES
United States District Judge

-12-